UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JSB-2, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-267 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This is a social security appeal on behalf of a child, referred to by her initials, J.S.B.[1] The child's mother alleges that the child is disabled by a disorder of her right arm caused by trauma during birth. An administrative law judge agreed that J.S.B. had severe impairments but found that she did not qualify as disabled. J.S.B.'s mother seeks review of that decision. As explained below, the Court concludes that the decision was supported by substantial evidence and was procedurally sound, so the Court affirms the Commissioner's decision.

### I. FACTUAL BACKGROUND

J.S.B. was born in January 2014. She experienced a trauma to her right shoulder during the delivery due to shoulder dystocia. After the delivery, she would move her right wrist and forearm but was not moving her right shoulder. Routine doctors' visits over the ensuing months reflected that J.S.B. was developing appropriately, but that she was still experiencing problems with her right shoulder. J.S.B. was diagnosed with Erb's Palsy and was referred for physical therapy. J.S.B.'s mother completed a function report in August 2018, indicating that J.S.B. was

---

[1] The complaint identifies the child as "JSB-2," as another case was filed the same day on behalf of the child's sibling, who has the same initials.

functioning like a normal seven-month-old except for her right arm, which caused difficulty crawling, rolling over, and holding a bottle. Office reports from around the same time indicated that J.S.B. would hold her bottle with her left hand, using her right hand only for support, and that she would move her right hand by bending at the elbow but not the shoulder. (R. 232–33, 282). A consultative examination the following month indicated that J.S.B. had motor delays but was otherwise average in her overall development.

Physical therapy records reflected that J.S.B. generally made progress with her right arm but still had decreased use of her shoulder. She was also fitted with orthotic braces. A function report completed in February 2016 indicated that J.S.B.'s use of her right hand and arm had improved, and that she was willingly using her right hand to manipulate objects. It also noted that J.S.B. could drink from an open cup, use utensils, brush her teeth, and wash her hands. (R. 357).

J.S.B.'s mother had applied for disability benefits on her behalf in July 2014. Agency consultants thus reviewed her records in September and October 2014 but concluded that J.S.B. was not disabled. In particular, they concluded that she had "marked" limitations in the domain of Moving About and Manipulation of Objects, but no limitations in the other five domains. (R. 60–61). On reconsideration, another set of consultants reached the same conclusions, except that they concluded she had "less than marked" limitations in the domain of Health and Physical Well-Being. J.S.B.'s mother thus requested a hearing, which took place in December 2016. J.S.B.'s mother attended the hearing and waived her right to counsel after discussing her rights with the ALJ.

After the hearing, the ALJ issued a decision finding that J.S.B. did not qualify as disabled. He found that she had severe impairments of Erb's Palsy and a motor skills

developmental delay, but that she did not meet or medically equal a listing. The ALJ thus considered her functioning in the six domains to determine if she functionally equaled a listing. He found that J.S.B. had marked limitations in the domain of Moving About and Manipulation of Objects; less-than-marked limitations in the domain of Health and Physical Well-Being; and no limitations in the remaining domains. Because J.S.B. did not have marked limitations in at least two domains, she did not qualify as disabled, so the ALJ denied her claim. The Appeals Council denied review, so J.S.B.'s mother filed this action seeking review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d

3

535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Under Supplemental Security Income rules, a child is disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). This assessment requires a three-step analysis. 20 C.F.R. § 416.924(a); *L.D.R. v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019); *Jelinek v. Astrue*, 662 F.3d 805, 809–10 (7th Cir. 2011). At step one, if the child is engaged in substantial gainful activity, then she is not disabled. *Id*. At step two, if the child does not have a severe medical impairment or combination of impairments, then she is not disabled. *Id*. At step three, a child will qualify as disabled only if her impairments "meet," "medically equal," or "functionally equal" any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

To determine if a child's impairments are "functionally equivalent" to a listing, an ALJ analyzes their severity in six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §

4

416.926a(b)(1); *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006) (since children do not generally have work history, the structure of the disability program for them necessarily differs from that for adults, and focuses on the functioning of the child in specified areas of life activity). For a child to functionally equal a listing, the ALJ must find an "extreme" limitation in one domain or "marked" limitations in two domains. 20 C.F.R. § 416.926a(a), (e)(2)(i).

A "marked" limitation is one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation represents functioning between two and three standard deviations below the mean. A limitation is "extreme" if it "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). It represents functioning at least three standard deviations from the mean.

## IV. DISCUSSION

J.S.B. offers three arguments in support of reversal. First, she argues that the ALJ failed to adequately develop the record because one treatment provider did not provide its records in response to the ALJ's requests. Second, she argues that the ALJ engaged in cherry-picking in evaluating the domain of Caring for Yourself, by failing to acknowledge two pieces of evidence. And third, she argues that the ALJ's credibility assessment was illogical and failed to build a logical bridge from the evidence to the findings. The Court concludes that none of these arguments warrant reversal. To the contrary, the ALJ made adequate efforts to develop the record and had ample evidence from which to evaluate J.S.B.'s conditions. The ALJ's decision also adequately discussed the relevant evidence and explained the ALJ's reasoning so as to permit meaningful review, and the ALJ's findings were supported by substantial evidence.

## A. Duty to Develop the Record

J.S.B. first argues that the ALJ erred by failing to obtain medical records from her visits with a specialist. An ALJ has "a basic obligation" to "develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). That duty is enhanced when a claimant appears without counsel, as did J.S.B.'s mother. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). In that event, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 1098 (quotations and alterations omitted). That can entail "asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Id.* Even when a claimant lacks counsel, though, courts "generally uphold[] the reasoned judgment of the Commissioner on how much evidence to gather," and will reverse only when the claimant identifies an omission that is "significant" and "prejudicial." *Id.*

J.S.B. argues that the ALJ fell short of this obligation by failing to obtain records from a specialist she saw in Indianapolis. Though J.S.B. acknowledges that the ALJ requested records from that provider, she argues that the ALJ erred by failing to follow up when the provider responded that it was unable to locate any records. The ALJ did, in fact, follow up, though. Records were initially requested from that provider in April 2016. (R. 435). The provider responded with a letter stating, "We have been unable to locate a record for the above-named patient." (R. 433). At the hearing in December 2016, the ALJ asked J.S.B.'s mother if the record was complete, and the mother noted that J.S.B. had also seen the specialist. (R. 39). Following the hearing, the ALJ thus submitted another request to that provider, but again, they responded that they were unable to find that patient. (R. 741). Each of the requests accurately identified J.S.B.'s name, date of birth, and social security number. Having twice made those requests, the ALJ cannot be faulted for believing that further requests would be futile.

6

In addition, the ALJ had a fulsome record on which to evaluate J.S.B.'s claim even without these records. This is not a case where the absence of records from a particular provider left an extended gap in the record. *See Nelms*, 553 F.3d at 1098 (remanding where the failure to obtain particular records left a "two-year evidentiary gap" in the claimant's treatment history). J.S.B. was only three years old at the time of the ALJ's decision, but the medical records already exceeded 500 pages. (R. 201–740). Those included records from each of her visits with her primary care physicians, as well as records from her regular physical therapy sessions. Those records extensively document the nature of her condition and her limitations and cover the entire period of her claim. By contrast, J.S.B. saw the specialist on only two occasions to consult as to whether she would need surgery. (R. 39). Her mother's testimony was that the specialist was waiting to see if J.S.B. made progress before deciding whether to perform surgery (R. 39, 51), which doesn't suggest these records would have contained unique information important to the ALJ's assessment of J.S.B.'s limitations. J.S.B. has offered no reason why the notes from those visits would affect the evaluation of her claim in light of the extensive evidence already in the record. Accordingly, the Court cannot find either that the ALJ erred in this respect or that any error would justify remand.

**B.     Cherry-Picking**

J.S.B. next argues that the ALJ erred in evaluating the domain of Caring for Yourself, by failing to acknowledge two pieces of evidence. As J.S.B. notes, an ALJ cannot cherry-pick facts that support his findings while ignoring evidence to the contrary. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did not commit that error here, though.

J.S.B. identifies two statements by her mother that she believes the ALJ should have addressed but did not: a note in a function report that J.S.B. could not hold her bottle properly, and testimony that J.S.B. had difficulty with potty training. The ALJ expressly acknowledged the

7

first piece of evidence, though. The record J.S.B. cites is a function report completed by her mother in August 2014, when J.S.B. was about seven months old. After completing a series of check-boxes outlining J.S.B.'s abilities, her mother wrote: "[J.S.B.] is on target for functioning like a 7 month old except for usage of her right arm. The arm keeps [J.S.B.] from crawling properly. She is unable to hold her bottle properly and she has trouble rolling over at times." (R. 150).

J.S.B. argues that the ALJ ignored the statement about her difficulty holding a bottle. But not only did the ALJ's decision repeatedly reference this function report, it specifically acknowledged the statement that J.S.B. could not hold a bottle properly: "The mother reported that the claimant was on target for functioning like a seven month old except for her right arm. According to her mother, the problems with the right arm kept the claimant from crawling properly, holding her bottle, and rolling over at times." (R. 18). J.S.B.'s argument that the ALJ ignored this evidence is incorrect.

J.S.B.'s argument about her potty training difficulties is misplaced as well. J.S.B.'s mother testified that potty training had been hard for J.S.B. (R. 46). J.S.B. argues that the ALJ should have noted that particular testimony because "[n]ot being able to use the bathroom in an age appropriate manner is [a] major deficiency that should have been analyzed" under the domain of Caring for Yourself. [DE 19 p. 25]. The mother's testimony was not that J.S.B. was unable to use the bathroom in an age appropriate manner, though. Rather, her testimony was that due to the problems with her right arm, J.S.B. needed reminders to use both arms instead of one to dress herself after using the bathroom:

> Q. What kinds of things does she have trouble doing with that right arm/right hand?
>
> A. Well, pretty much everything. She could play, like I said, she can't fully extend, what she can do right now we're in the process potty training has been hard

> for her. . . . Because I guess her brain doesn't send signals you know, to her arms, letting her know pull up kind of -- so like when she's going to the bathroom, we know that she always try to use the left hand and she pulls all the way around, you know, trying to pull them up, we're like you have to use your right hand, too.

(R. 46). Viewed in context, this testimony illustrates that J.S.B. had difficulty using her right arm, and the ALJ discussed those limitations at length and concluded that J.S.B. has "marked" limitations in the domain of Moving About and Manipulating Objects. But this testimony does not show that J.S.B. was unable to use the bathroom in an age appropriate manner, so there was no reason the ALJ needed to have addressed this piece of evidence relative to the domain of Caring for Yourself.[2]

In addition, substantial evidence supported the ALJ's finding that J.S.B. was not limited in that domain. First, the ALJ gave great weight to the opinions of the agency reviewing physicians. (R. 20–21). Those experts each reviewed the evidence (including the function report completed by J.S.B.'s mother), and all opined that J.S.B. had no limitations in that domain. (R. 60, 69). The ALJ also discussed other evidence in the record in support of this finding. He noted the function report in which J.S.B.'s mother reported that J.S.B. "was on target for functioning like a seven month old except for her right arm." (R. 26). He also discussed another function report from when J.S.B. was about two years old. (R. 26, 356–59). That report indicated that J.S.B. "could drink from an open cup and use food utensils," and that she "could brush her teeth" and "wash her face and hands." (R. 26, 357). That report further indicated that J.S.B. "met her own internal needs" and "participated in established social routines." (R. 26, 358). All of that

---

[2] Likewise, the evidence about J.S.B.'s difficulty holding a bottle was not that she was unable to feed herself in an age appropriate manner, as J.S.B.'s brief suggests, but only that she had difficulty holding the bottle "properly." (R. 150, 216 ("There are no feeding difficulties"), 282 ("Holds bottle with L hand and places R hand under bottle for some support.")).

9

evidence supports the ALJ's finding that J.S.B. was not limited in this domain, so the Court cannot reverse on this basis.[3]

## C. Credibility

Finally, J.S.B. argues that the ALJ's credibility assessment was illogical and internally inconsistent. J.S.B. focuses on a statement in the ALJ's decision that "[t]he claimant's allegations are not consistent with the evidence." (R. 20). That statement introduced a paragraph in which the ALJ noted various evidence of J.S.B.'s progress and her ability to function despite her limitations. J.S.B. first argues that this statement is illogical because the claimant was a three-year-old child who made no allegations. That is a disingenuous reading of the ALJ's decision, though. The ALJ was not under any delusion that a three-year-old child made her own allegations of disability, and the Court will not adopt such a strained and uncharitable interpretation of the ALJ's decision. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading."). Rather, as the Commissioner notes, the only reasonable interpretation of this statement is that the ALJ was referring to the allegations of disability made on J.S.B.'s behalf. J.S.B. also argues that this statement is inconsistent with the fact that the ALJ generally credited her mother's testimony. That is not inconsistent, though. An ALJ could reasonably credit a witness's factual testimony but conclude that those facts fall short of establishing disability, as that term is defined under agency regulations.

---

[3] In fact, as the Commissioner notes, the record could not reasonably support a finding that J.S.B.'s limitations in this domain were "marked" (as would be necessary to support a finding of disability), so any error in the ALJ's analysis would be harmless. The evidence J.S.B. cites as to this domain—that she tended to use one hand instead of two to dress herself or hold her bottle—falls well short of suggesting that she had marked limitations in her ability to care for herself.

10

J.S.B. also argues that the ALJ failed to build a logical bridge because this statement did not itself reveal which allegations the ALJ found were inconsistent with the evidence. But that argument overlooks the rest of the ALJ's opinion, which is quite detailed and methodically lays out the ALJ's findings and the reasons for them. The decision discussed all of the evidence, including the treatment records from J.S.B.'s birth until the hearing. (R. 18–20). It also noted the testimony by J.S.B.'s mother (R. 17) and described the ALJ's assessment of the opinion evidence (R. 20–21). Then, in a discussion spanning over six single-spaced pages, the decision proceeded through each of the six domains. For each domain, the decision identified the legal standard; gave examples of expected functioning at relevant age levels; and spent a paragraph discussing the evidence that supported the ALJ's conclusion as to that domain. (R. 21–27). That discussion lays out the ALJ's reasoning and the evidence upon which he relied in reaching his findings, and allows the Court to review the ALJ's decision. No more is required. *See L.D.R.*, 920 F.3d at 1152; *Craft*, 539 F.3d at 673 (stating that an ALJ's decision must provide enough detail that a reviewing court "may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review" (quotation and alteration omitted)). This argument thus does not present a basis for reversal either.

## V. CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision finding that J.S.B. did not qualify as disabled. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED: May 10, 2019

/s/ JON E. DEGUILIO  
Judge  
United States District Court